IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR. NO. 2:26-cr-00683 |
| | ) | |
| | ) | |
| vs. | ) | 46 U.S.C. § 70036(b)(1) |
| | ) | 18 U.S.C. § 1505 |
| | ) | 18 U.S.C. § 2 |
| | ) | |
| MSC SHIPMANAGEMENT LIMITED. | ) | **INFORMATION** |

COUNT ONE
(Failure to Report a Hazardous Condition)

THE UNITED STATES ATTORNEY AND THE PRINCIPAL DEPUTY ASSISTANT ATTORNEY GENERAL CHARGE:

1.    At all times relevant to this Information, unless otherwise indicated:

The Defendant

a.    Defendant was a company domiciled in Cyprus with offices at MSC House, 8, Spyrou Kyprianou Avenue, 3070 Limassol, Cyprus. At all relevant times, Defendant operated the *M/V* ("Motor Vessel") *MSC Michigan VII*.

The *M/V MSC Michigan VII*

b.    The *M/V MSC Michigan VII* was a 74,583 gross ton ocean-going container ship registered in Liberia and had an International Maritime Organization number of 9196864. The vessel transported cargo worldwide including to and from Charleston, SC.

c.    The *M/V MSC Michigan VII* had a crew that included, among others, a Master, Chief Officer, Chief Engineer, Second Engineer, Third Engineer,

1

Fourth Engineer, Fitter, Electrician and three Oilers. The Master had overall responsibility for the vessel, the Chief Officer was responsible for the Deck Department, and the Chief Engineer was responsible for the Engineering Department. The subordinate Engineering Department crew members reported to the Second Engineer, who reported directly to the Chief Engineer. The involved crew were agents of Defendant and, with respect to their conduct described here, acted within the scope of that agency and for the intended benefit, at least in part, of Defendant.

d. The Chief Engineer was responsible for all the engineering aspects of the ship, such as the operation and maintenance of machinery onboard, including the Main Engine. The Main Engine had a Governor (Governor), which regulated the speed of the Main Engine by controlling the amount of fuel that was supplied to the Main Engine. The Governor consisted of several parts, including an electronic mechanism that would rotate depending on the speed input signal (in revolutions per minute or "rpm") that it received from either the engine order telegraph on the bridge or the engine order telegraph in the engine control room. A telegraph is used to order the change of speed and direction of the main engine. Telegraph commands include forward bells of dead slow (28 rpm at 6.85 knots), slow (40 rpm at 9.80 knots), half (55 rpm at 13.45 knots) and full (75 rpm at 18.36 knots). One knot equals 1.15 miles per hour.

<u>The Ports and Waterways Safety Act, 46 U.S.C. § 70001 *et seq.*</u>

e. The Ports and Waterways Safety Act ("PWSA") empowered the Secretary of Homeland Security ("Secretary") to "take such action as is necessary to

2

(1) prevent damage to, or the destruction of, any bridge or other structure on or in the navigable waters of the United States, or any land structure or shore area immediately adjacent to such waters...; and (2) protect the navigable waters and the resources therein from harm resulting from vessel or structure damage, destruction, or loss..." 46 U.S.C. § 70011(a). The PWSA further authorized the Secretary to issue regulations governing vessel operations, ports and waterways safety, and conditions of entry into the ports of the United States. 46 U.S.C § 70034.

f.     The PWSA regulations require that whenever there is a hazardous condition either on board a vessel or caused by a vessel or its operations, the owner, agent, master, operator, or person in charge shall immediately notify the nearest Coast Guard Sector Office or Group Office. 33 C.F.R. § 160.216(a). The requirement applies to all foreign vessels that are bound for ports or places within the navigable waterways of the United States. 33 C.F.R. § 160.203. A "hazardous condition" means "any condition that may adversely affect the safety of any vessel, bridge, structure, or shore area or the environmental quality of any port, harbor, or navigable waterway of the United States. It may, but need not, involve collision, allision, fire, explosion, grounding, leaking, damage, injury or illness of a person aboard, or manning-shortage." 33 C.F.R. § 160.202.

<u>United States Enforcement of the PWSA</u>

g.     To facilitate enforcement of the PWSA, the Coast Guard is empowered under 14 U.S.C. § 522(a) to board vessels and conduct inspections and investigations of potential violations of international and United States law. Pursuant to that authority, the Coast Guard "may make inquiries, examinations,

3

inspections, searches, seizures, and arrests upon the high seas and waters over which the United States has jurisdiction, for the prevention, detection, and suppression of violations of laws of the United States."

2.    On or about June 5, 2024, in the port of Charleston, South Carolina, in the District of South Carolina, the Defendant

**MSC SHIPMANAGEMENT LIMITED.,**

knowingly and willfully failed and caused the failure to immediately report the existence of a hazardous condition on the *M/V MSC Michigan VII* to the nearest U.S. Coast Guard Sector Office. Specifically, **MSC SHIPMANAGEMENT LIMITED.,** acting through its agents or employees who were acting within the scope of their agency or employment and for the benefit, at least in part, of the Defendant, is vicariously liable for the actions of the Chief Engineer who failed to immediately report and caused the failure to immediately report the existence of the hazardous condition that the vessel's main engine governor linkage had to be and was being manually manipulated in order for the Main Engine to achieve the ordered revolutions per minute that was signaled from the bridge telegraph during maneuvering.

In violation of Title 46, United States Code, Section 70036(b)(1), Title 18, United States Code, Section 2 and Title 33, Code of Federal Regulation, Section 160.216(a).

4

## COUNT TWO
### (Obstruction of Agency Proceeding)

3.      Paragraph 1 is referenced and fully incorporated herein. On or about June 8, 2024, in the port of Charleston, South Carolina, in the District of South Carolina, the Defendant

**MSC SHIPMANAGEMENT LIMITED.,**

during an official proceeding of the National Transportation Safety Board and the United States Coast Guard, corruptly endeavored to influence, obstruct or impede the due and proper administration of the law, to wit: **MSC SHIPMANAGEMENT LIMITED.,** acting through its Chief Engineer who was an agent or employee who was acting within the scope of his agency or employment and for the benefit, at least in part, of the Defendant, falsely stated to the National Transportation Safety Board and the United States Coast Guard that: (1) the problem with the Main Engine not achieving the revolutions per minute ordered by the bridge telegraph had never happened before; (2) that the governor linkage had not been "touched" and "twisted" by anyone other than a technician; and (3) that he did not know if the governor linkage was being manipulated and twisted by others, conduct for which the Defendant is vicariously liable.

In violation of Title 18, United States Code, Section 1505.

BRYAN P. STIRLING
UNITED STATES ATTORNEY

By: _____  _____7/27/2026_____

Dean H. Secor      Date
Assistant United States Attorney


ADAM R.F. GUSTAFSON
PRINCIPAL DEPUTY
ASSISTANT ATTORNEY GENERAL
ENVIRONMENT & NATURAL
RESOURCES DIVISION


By: _____  _____July 27, 2026_____

Stephen Da Ponte     Date
Assistant Chief

6